Benjamin Donel, Esq. (SBN: 226226)
LAW OFFICES OF BENJAMIN DONEL & ASSOCIATES, APC
6125 Washington Blvd, Suite 300
Culver City. CA 90232
Telephone: (310) 864-7600
Facsimile: (310) 626-9752

Attorney for Defendant
Easy Financial, LLC and Stone Sharp

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| BRENDA WHITTAKER, an individual, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EASY FINANCIAL, LLC d/b/a Sunset Equity, a California limited liability company, and STONE SHARP, an individual.<br><br>Defendants. | Case No.: 3:21-cv-08212-DJH<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(2), and 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff brings this matter pleading class action for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or the "Act") by violating the "Do Not Call" ("DNC") list.

On or about September 20, 2021, Plaintiff, Brenda Whittaker ("Whittaker" or "Plaintiff") brought a one count class action complaint erroneously naming Real Estate Heaven International, Inc. and Stone Sharp. On or about October 6, 2021, Plaintiff dropped Real Estate Heaven International, Inc. ("Real Estate Heaven") and bringing this

1

1  First Amended Complaint ("FAC") naming Easy Financial, LLC for the same one count
2  claim.
3       Plaintiff's class allegations claim Defendants willfully violate the DNC list based
4  solely on two text messages she allegedly received.  Somehow this establishes a pattern
5  of behavior.

## **INTRODUCTION**

7       Plaintiff alleges the Defendants Easy Financial, LLC dba Sunset Equity Funding
8  aka Sunset Equity Group ("Easy Financial") and Stone Sharp ("Mr. Sharp") (collectively
9  "Defendants") violated the TCPA by texting her cell phone twice.  Plaintiff alleges she is,
10  or was, on the DNC list.  On this basis she alleges a nationwide class action made to
11  putative class members.  ECF No. 7 at 5 to 7.
12       Plaintiff's class action claims are based on declarations and assertions, without
13  facts or evidence, Defendants allegedly violated the TCPA (they did not).  Plaintiff
14  makes allegations, without facts or evidence, to plead the elements of a cause of action.
15  ECF No. 7 at 3-4, ¶¶ 7-17.
16       The Complaint should be dismissed for failure to state a claim under Rule
17  12(b)(6), as Plaintiff fails to sufficiently allege a claim under the TCPA or any facts to
18  support such a claim.  She does not plead any facts supporting his conclusory allegations
19  Defendants willfully contacted the purported class in violation of the DNC list.
20       The Complaint should be dismissed pursuant to Rules 8 and 10 for not meeting
21  basic federal pleading requirements.
22       Plaintiff's allegations are made by rote, devoid of facts, and are conclusory.
23       The Complaint should be dismissed as exculpatory evidence has been supplied to
24  Plaintiff's counsel that Plaintiff had given consent to be contacted.  Yet, Plaintiff's
25  counsel refuse to amend the complaint or dismiss this matter entirely.
26       Lastly, the Complaint should be dismissed as this court lacks jurisdiction.
27  Defendants are residents of the State of California, County of Los Angeles.  Plaintiff and
28  the non-Arizona putative class members must demonstrate that its contacts with Arizona

1  are so "continuous and systematic as to render them essentially at home in the forum

2  State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011);

3  *and Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014).

4        The essential test of "essentially at home in the forum State" requires whether a

5  foreign corporation's in-forum contacts can be said to be in some sense "continuous and

6  systematic," it is whether that corporation's "affiliations with the State are so 'continuous

7  and systematic' as to render [it] essentially at home in the forum State." *Daimler AG* at

8  138-139, *quoting Goodyear Dunlop Tires* at 919.

9  ### STATEMENT OF FACTS

10        Easy Financial is a Nevada limited liability corporation with its principal offices in

11  Culver City, California, and is an originator of real estate loans.   Dec. of Donel ¶ 2.

12        Easy Financial does not have any offices, bank accounts, or assets in the State of

13  Arizona.  Dec. of Donel ¶ 3.  Dec. of Sepehran ¶ 4.

14        Easy Financial does business as Sunset Equity Funding aka Sunset Equity Group.

15  Dec. of Donel ¶¶ 4, 5.  Dec. of Sepehran ¶ 2.

16        Easy Financial and Sunset Equity are not licensed for real estate in Arizona.  Dec.

17  of Donel ¶ 6.  Dec. of Sepehran ¶¶ 5, 6.

18        **A.  Easy Financial Has an Established Business Relationship with Plaintiff**

19        Plaintiff has established a business relationship with Easy Financial.

20        Easy Financial established a business relationship when the Plaintiff submitted her

21  name and phone number into a marketing website requesting a salesperson to call her.

22  Dec. of Sepehran ¶ 7.

23        Plaintiff placed her name and telephone number with Connected Investors

24  Exchange ("CIX") (https://cix.connectedinvestors.com) on or about September 25, 2018

25  requesting information about obtaining a loan.   Dec. of Sepehran ¶ 8.

26        Prior to submitting he name to CIX, Plaintiff agreed to a disclaimer, stating in

27  relevant part:  Dec. of Sepehran ¶ 9.

28

**3**

1
2
3

> By continuing you expressly consent to having private money lenders and our network partners contact you about your inquiry by email, text message or phone... even if that telephone number is on a corporate, state, or national Do Not Call Registry.

4  Before submitting her request to CIX, Plaintiff was presented a screen to input her
5 information and confirm agreement to the disclosure shown below:  Dec. of Sepehran ¶ 9.



14  By agreeing to the disclaimer, bordered in red, Ms. Whitaker agreed to having
15 private money lenders and network partners contact her.  Further, Plaintiff agreed to
16 accept calls or texts even if that telephone number is on a corporate, state, or national Do
17 Not Call Registry.
18  Below is the screenshot of the disclosure she agreed to:

19
20
21

> By continuing you expressly consent to having private money lenders and our network partners contact you about your inquiry by email, text message or phone (including automatic telephone dialing system or an artificial or prerecorded voice) to the residential or cellular telephone number you have provided, even if that telephone number is on a corporate, state, or national Do Not Call Registry. By communicating with any of our network lenders by phone, you consent to calls being recorded and monitored.

22  Easy Financial is a network partner of CIX.  Dec. of Sepehran ¶ 13.
23  When Plaintiff requested loan information, Plaintiff gave her name, address,
24 phone number, and email to CIX.  Dec. of Sepehran ¶¶ 9, 10.  Plaintiff stated she desired
25 a loan of $150,000.00 with 10% down payment for the purchase of a residential property.
26 Dec. of Sepehran ¶ 11.
27 ///
28 ///

**4**

CIX lists all of its marketing partners and affiliates on its website as companies that potentially could contact Plaintiff by telephone, text, or email.  Dec. of Sepehran ¶ 12.

### B. Easy Financial Obtains Contacts

Easy Financial obtains telephone numbers only from its marketing partners and affiliates, like CIX.  Any telephone number Easy Financial uses, or has used, for marketing purposes has expressly waived the Do Not Call restriction.  Dec. of Sepehran ¶¶ 14, 15.  Easy Financial does not use automated calling devices or randomly generated numbers.  Dec. of Sepehran ¶ _.

Easy Financial respects whenever a recipient of a text message replies with STOP.  That contact is never used again.  Dec. of Sepehran ¶ 20.

Plaintiff failed to respond with STOP after the first message.  Dec. of Sepehran ¶ 21.

### C. Mr. Sharp Allegedly Sent Text Messages

Plaintiff alleges that on or about May 4, 2021, and again on May 7, 2021, Mr. Sharp sent text messages to Plaintiff.  ECF No. 7 at 4 ¶¶ 16 and 17.

Periodically, Defendants would desire to send a text message advertising campaign.  Dec. of Sepehran ¶ 16.  Dec. of Sharp ¶ 9.  The cellular telephones numbers selected are from Easy Financial's database of established contacts, persons who have expressed desire to receive advertising texts.  Dec. of Sepehran ¶¶ 17, 18.  Dec. of Sharp ¶ 10.

Plaintiff's cellular telephone number was in Easy Financial's database as a contact that requested loan information.   Dec. of Sepehran ¶ 18.  Dec. of Sharp ¶ 11.

Mr. Sharp's contact number was clearly and prominently displayed in the text messages.  Dec. of Sharp ¶ 12.  Plaintiff had means and opportunity to respond STOP to opt out of any further contact.  Dec. of Sepehran ¶ 22.  Dec. of Sharp ¶ 12.

///

///

# ARGUMENTS

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). Plaintiffs have failed to state a claim, in fact or in law, on which relief could be granted and this court does not have jurisdiction over Defendants.

## I. FAILURE TO STATE A CLAIM FOR RELIEF PURSUANT TO RULE 12(b)(6)

Rule 12(b)(6) provides for dismissal where a plaintiff has failed to state a claim upon which relief can be granted. Legal claims mandate pleading sufficient facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "bare assertion" and "conclusory allegations" will not suffice. *Id*. A "formulaic recitation of the elements" of a claim likewise fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In assessing whether a plaintiff has stated a claim, the court will accept as true all "well-pleaded factual allegations and construe all factual inferences in the light most favorable to the plaintiff." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1240 (9th Cir. 2020). Legal conclusions couched as factual allegations are not entitled to a presumption of truth and are not sufficient to defeat a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678; *Parents for Privacy* at 825.

## II. DEFENDANTS ARE NOT SUBJECT TO THE JURISDICTION OF THIS COURT PURSUANT TO RULE 12(b)(2)

When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction is proper. *McManaway v. KBR, Inc.*, 695 F. Supp. 2d 883, 888 (S.D. Ind. 2010). In the context of a motion to dismiss based upon pleadings and affidavits, the plaintiff may meet this burden by making a prima facie showing of personal jurisdiction. *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz*

1  *Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020).  Arizona law permits its Courts to
2  exercise personal jurisdiction "to the maximum extent permitted by . . . the United States
3  Constitution." Ariz. R. Civ. P. 4.2(a).
4        A Court may exercise personal jurisdiction over an out-of-state defendant if the
5  defendant has "certain minimum contacts with [the State] such that the maintenance of
6  the suit does not offend traditional notions of fair play and substantial justice." *Axiom*
7  *Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).
8        "Under the 'effects test,' the purposeful availment requirement is satisfied when a
9  non-resident defendant undertakes activities outside the forum state that are both aimed at
10 and have their primary effect in the forum state.  The Ninth Circuit articulates the effects
11 test as a three-part test requiring that personal jurisdiction be predicated on (1) intentional
12 actions that are (2) expressly aimed at the forum state, and (3) cause harm, 'the brunt of
13 which is suffered - and which the defendant knows is likely to be suffered - in the forum
14 state.'" *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1200
15 (C.D. Cal. 2000)

**A. The Court Lacks Jurisdiction Over Easy Financial**

17     Easy Financial is a Nevada corporation with its principal office in Los Angeles
18 County, State of California.  Dec. of Sepehran ¶ 2.  Easy Financial does not have any
19 offices, bank accounts, or assets in the State of Arizona.  Dec. of Sepehran ¶ 4.

**1. Plaintiff Cannot Establish General Jurisdiction**

21     To establish general jurisdiction over Easy Financial, Plaintiff and the non-
22 Arizona putative class members must demonstrate that its contacts with Arizona are so
23 "continuous and systematic as to render a defendant essentially at home in [Arizona]."
24 *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) *see also Glob. Commodities Trading*
25 *Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020).  The
26 "place of incorporation and principal place of business are "paradig[m] . . . bases for
27 general jurisdiction." *Daimler AG* at 760 *see also Loomis v. Slendertone Distribution,*
28 *Inc.*, 420 F. Supp. 3d 1046, 1065 (S.D. Cal. 2019).

Only in an "exceptional case' will general jurisdiction be available anywhere else." *Loomis* at 1065. The "exceptional case" centers upon "whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render it *essentially at home* in the forum State'"—not whether the contacts are merely "continuous and systematic." *Loomis* at 1065, *quoting Daimler AG* at 138-139.

## 2. Plaintiff Cannot Establish Specific Jurisdiction

Specific jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017), *quoting Goodyear Dunlop Tires Operations, S.A.* at 919. Thus, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co.* at 1780, *quoting Goodyear Dunlop Tires Operations, S.A.* at 919.

The Court in *Walden* ruled, "the proper focus of the 'minimum contacts' inquiry in [tort cases is] 'the relationship among the defendant, the forum, and the litigation'… it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore*, 571 U.S. 277, 291.

In citing *Walden*, the Supreme Court explained "[b]ecause the '*relevant* conduct occurred entirely in Georgi[a] . . . the mere fact that [this] conduct affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction.'" *Bristol-Myers Squibb Co.* at 1781-1782.

Plaintiffs may assert the marketing of loans in Arizona as evidence that Defendants "placed product into the stream of commerce." As *Daimler* explained, "'although the placement of a product into the stream of commerce 'may bolster an affiliation germane to *specific* jurisdiction'… such contacts "do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.'" *Daimler AG* at 757.

///

8

**B. Stone Sharp is Not a Resident of Arizona**

Mr. Sharp was born in San Bernardino County, California and is currently a resident of Los Angeles County, California. Dec. of Sharp ¶ 2. Mr. Sharp has never resided in Arizona. Dec. of Sharp ¶ 3. Mr. Sharp does not personally maintain bank accounts, addresses, or telephone numbers in Arizona. Dec. of Sharp ¶ 3. Mr. Sharp is an employee of Easy Financial as a licensed loan officer working in the Culver City office. Dec. of Sharp ¶ 4.

Corporate officers do not "become a party to the contract simply by 'signing it in the officer's representative capacity.'" Boon Glob. Ltd. v. United States Dist. Court (In re Boon Glob., Ltd.), 923 F.3d 643, 651 (9th Cir. 2019). Courts have held that "Corporate officers can be liable for corporate actions where they are "the guiding spirit behind the wrongful conduct, or the central figure in the challenged corporate activity." Id.

Here, Mr. Sharp is NOT a corporate officer, but an employee. Mr. Sharp does not have authority to enter into contracts. Dec. of Sepehran ¶ 23. Dec. of Sharp ¶ 8. Plaintiff has not plead facts sufficient to show a prima facie showing of jurisdictional facts against Mr. Sharp.

**III.    TCPA ALLOWS UNSOLICITED CALLS AND TEXTS**

The Telephone Consumer Protection Act ("TCPA") "permits unsolicited advertisements as part of an established business relationship or with notice of the recipient's right to opt out of future advertising." *See* 47 U.S.C. § 227(b)(1)(C), (b)(2)(D)-(E). *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* (9th Cir. 2019) 913 F.3d 923, 930.

This is consistent with other 9th Circuit decisions:

- *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 979-80 (N.D. Cal. 2019), "that a defendant may avoid liability by establishing that it had prior express consent."

- *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018), "'express consent' is an affirmative defense to a claim brought under a provision of the TCPA dealing with unsolicited telephone calls"
- *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 666-67 (2016), "prohibits any person, absent the prior express consent of a telephone-call recipient, from 'mak[ing] any call . . . using any automatic telephone dialing system . . . to any telephone number assigned to a paging service [or] cellular telephone service.'"

The TCPA does not have any "distinction between 'express consent' and 'prior express invitation or permission' that would affect which party bears the burden of proving consent. *True Health Chiropractic, Inc*. at 931.

### A. Express Consent is Given When a Person Knowingly Releases Their Phone Number

In *Van Patten*, the court relied on the Federal Communications Commission's ("FCC") Orders and Rulings 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) (the "1992 Order"), which interpret and clarify the term "prior express consent." *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1044 (9th Cir. 2017). The court noted that the 1992 Order stated, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary" and thus express consent was given. *Van Patten* at 1044.

### B. Consent Can Be Revoked

The FCC has stated that consumers may revoke their consent, "can be confirmed during the same call in which a consumer has expressed a desire to opt out . . ." 27 F.C.C. Rcd. at 15398 ¶ 13, *also Van Patten* at 1047. The FCC stated "that a consumer may revoke his or her prior express consent by sending an opt-out request to the sending party. [*Citations Omitted*.] For example, a consumer may request 'that no further text messages be sent.'" 27 F.C.C. Rcd. at 15398 ¶ 13, *also Van Patten* at 1047.

10

### IV. PLAINTIFF LACKS STANDING UNDER RULE 12(b)(1)

To the extent Plaintiff seeks to allege purported violations of the TCPA, Plaintiff's Complaint should be dismissed pursuant to FRCP Rule 12(b)(1) because this Court lacks subject matter jurisdiction over Plaintiff's claims as Plaintiff lacks standing to bring this cause of action, particularly as Plaintiff fails to allege she suffered an actual injury from the two (2) purported calls Plaintiff alleges he received.  FRCP Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction based on the face of the complaint.  *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017).

"In cases such as this one where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6).  Or both." *Brownback v. King*, 141 S. Ct. 740, 752 (2021).

### V. FRIVOLOUS AND UNMERITORIOUS CLAIMS

Plaintiff's attorney has continued to pursue this matter despite the fact Plaintiff does not have a claim were relief may be granted.  Plaintiff's attorney was presented evidence contradicting every assertation, allegation, and cause of action Plaintiff had.  In violation of Ariz. Rules of Prof'l Conduct R. 3.1, Plaintiff's attorney continues to pursue this matter, and demands a settlement disproportionate to the allegations in the complaint.

Ariz. Rules of Prof'l Conduct R. 3.1 states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a good faith basis in law and fact for doing so that is not frivolous, which may include a good faith and nonfrivolous argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Plaintiff's counsel has been provided incontrovertible evidence their client had requested telephone and/or test messages.  Despite good faith efforts on the part of Defendants, Plaintiff's attorney has made demands for settlement that are not proportionate to the alleged damages.

TCPA limits recovery for a private right of action to "actual monetary loss from such a violation," or "$500 in damages for each such violation." 47 U.S.C. § 227(b)(3)(B).

**A. Improper Settlement Negotiations**

On or about October 28, 2021, Sepehran and Plaintiff's attorney had a telephone conversation wherein Plaintiff's attorney demanded monetary payment of "six figures" to settle this matter. Dec. of Sepehran ¶ 26. This demand is excessive in light of the alleged damages, two text messages, and bordering on extortion. *See Flatley v. Mauro*, 39 Cal. 4th 299 (2006), *also Graham-Sult v. Clainos*, 738 F.3d 1131, 1147 (9th Cir. 2013), (Plaintiffs could not prevail on *any* claim, in the face of substantive defenses.)

Plaintiff's attorney may feel he is being zealous but are on "shaky ethical ground and flatly ignoring the requirements for professionalism and civility in their dealings with others."[1] 48 The Brief 48*. There is a line between plundering and posturing.[2] 45 The Brief 12. In this instance, that line was crossed.

Plaintiff's attorney, as conditions of settlement, is demanding Defendants force a third-party (CIX) to "change its website's consent language to clarify that individuals are also consenting to be called or texted by Easy Financial for a period of at least twenty-four (24) months." Dec. of Sepehran ¶ 27.

This is an unenforceable demand.

Further, Plaintiff's attorney is demanding monetary damages *as if Plaintiff litigated the class action*. Plaintiff's attorney wrote, "We need to confirm that prospective relief will be included in the agreement prior to discussing the monetary

---

[1] Francine Griesing, TAKING THE HIGH ROAD: HOW TO DEAL ETHICALLY WITH UNETHICAL BULLIES AMERICANBAR.ORG (2019), https://www.americanbar.org/groups/tort_trial_insurance_practice/publications/the_brief/2018-19/spring/taking-high-road-how-deal-ethically-unethical-bullies/ (last visited Nov 12, 2021).

[2] Gregory T. Presmanes & Phillip C. Kuck, *ETHICAL NEGOTIATIONS: HOW FAR IS TOO FAR?*, 52 TORT TRIAL & INSURANCE PRACTICE LAW JOURNAL 903–920 (2017), https://www.jstor.org/stable/26422022 (last visited Nov 12, 2021).

**12**

aspect. Additionally, for us to formulate a monetary demand we need to have a sense of the size of the potential class."[3] Dec. of Sepehran ¶ 28.

### B. Violation of Ethical Requirements

Plaintiff's claims are void and null with the fact that *she consented to the text*. To request these demands for settlement is extortionate and unconscionable.

When an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred." 28 U.S.C. § 1927. Pursuant to 42 U.S.C. § 1988, attorney fees may be awarded to a prevailing defendant upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," and "if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015). [*Emphasis in Original*.]

### VI. REQUEST FOR JUDICIAL NOTICE, RULE OF EVIDENCE, RULE 201(c)

Federal Rule of Evidence 201(b) permits judicial notice of any "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court "may take judicial notice on its own" and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

///

---

[3] Although Rule 408 prohibits the admission of settlements to prove liability for or the invalidity of a claim or its amount, it "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Green v. Baca*, 226 F.R.D. 624, 642 (C.D. Cal. 2005).

**13**

1     Courts may consider facts subject to judicial notice in deciding a motion to
2 dismiss under Rule 12(b)(6). In *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., the
3 Supreme Court ruled "courts must consider the complaint in its entirety, as well as other
4 sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in
5 particular, documents incorporated into the complaint by reference, and matters of which
6 a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S.
7 308, 321 (2007); *and Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.
8 2018); *and Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021).

**VII.  REQUEST REASONABLE ATTORNEY FEES AND COSTS**

10     FRCP Rule 54(d)(1) states, "Unless a federal statute, these rules, or a court order
11 provides otherwise, costs—other than attorney's fees—should be allowed to the
12 prevailing party."

13     Pursuant to 42 U.S.C. § 1988, "the court, in its discretion, may allow the
14 prevailing party . . . a reasonable attorney's fee as part of the costs." *Bravo v. City of*
15 *Santa Maria*, 810 F.3d 659, 665-66 (9th Cir. 2016). To determine the amount of a
16 reasonable fee, district courts typically proceed in two steps: first, courts generally apply
17 the lodestar method to determine what constitutes a reasonable attorney fee; and second,
18 the district court may then adjust the lodestar upward or downward based on a variety of
19 factors, including the degree of success obtained by the plaintiffs. *Id*.

20     A Plaintiff maintaining and litigating an action without merit and in bad faith, can
21 be charged with attorney fees incurred in the defense pursuant to 42 U.S.C. § 1988. *C.W.*
22 *v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1245 (9th Cir. 2015). When an attorney,
23 "unreasonably and vexatiously" multiplies the proceedings in any case, the attorney

24     When an attorney "who so multiplies the proceedings in any case unreasonably
25 and vexatiously" may be required by the court to "satisfy personally the excess costs."
26 28 U.S.C. § 1927.

27 ///
28 ///

FRCP Rule 54(d)(2) states, "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this court to order Plaintiff's complaint be dismissed with prejudice, Plaintiff takes nothing, Defendants be awarded reasonable costs and attorney fees; and any further relief the court may grant

Date:  November 15, 2021          LAW OFFICES OF BENJAMIN DONEL & ASSOCIATES

　　　　　　　　　　　　　　　　 /s/ *Benjamin Donel*
　　　　　　　　　　　　　　　　Benjamin Donel
　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　Donel Investments, LLC