Benjamin Donel, Esq. (SBN: 226226)
LAW OFFICES OF BENJAMIN DONEL & ASSOCIATES, APC
6125 Washington Blvd, Suite 300
Culver City, CA 90232
Telephone: (310) 864-7600
Facsimile: (310) 626-9752

Attorney for Defendant
Easy Financial, LLC and Stone Sharp

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| BRENDA WHITTAKER, an individual, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> EASY FINANCIAL, LLC d/b/a Sunset Equity, a California limited liability company, and STONE SHARP, an individual. <br><br> Defendants. | Case No.: 3:21-cv-08212-DJH <br><br> **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** <br><br><br> **ORAL ARGUMENT REQUESTED** |

PLEASE TAKE NOTICE THAT PURSUANT TO Federal Rule of Evidence 201 ("Rule 201") Defendants EASY FINANCIAL, LLC ("Easy Financial") and STONE SHARP ("Mr. Sharp") (collectively "Defendants") hereby submit this Request for Judicial Notice in Support of its Motion to Dismiss the First Amended Complaint filed by Plaintiff BRENDA WHITTAKER ("Plaintiff") pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 201 allows a court to take judicial notice of facts that are not subject to reasonable dispute where facts "can be accurately and readily determined from sources

1   whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  A court

2   "may take judicial notice at any stage of the proceeding," and "must take judicial notice if

3   a party requests it and the court is supplied with the necessary information." Fed. R. Evid.

4   201(c)(2), (d).

5       A court "may take judicial notice of matters of public record, including duly

6   recorded documents, and court records available to the public through the Pacer system via

7   the internet." *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1116 (C.D. Cal. 2010)

8   (citation omitted); *see also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.

9   1986).  These "matters of public record" also include government records and reports,

10  including those of local governments.  *Barron v.* 1 Judicial notice is also proper under the

11  California Evidence Code, which permits judicial notice to be taken of "[f]acts and

12  propositions that are not reasonably subject to dispute and are capable of immediate and

13  accurate determination by resort to sources of reasonably indisputable accuracy." Cal.

14  Evid. Code § 452(h); *see also id.* § 453(b) ("The trial court shall take judicial notice of any

15  matter specified in Section 452 if a party requests it and . . . [f]urnishes the court with

16  sufficient information to enable it to take judicial notice of the matter."). *Reich*, 13 F.3d

17  1370, 1377 (9th Cir. 1994) (holding that the district court properly took judicial notice of

18  a field operations handbook for a regional division of the Department of Labor because the

19  handbook "clearly constitute[d]" judicially noticeable facts); *United States v. Ritchie*, 342

20  F.3d 903, 909 (9th Cir. 2003) (observing "[c]ourts may take judicial notice of some public

21  records, including the 'records and reports of administrative bodies'" (citation omitted));

22  *Price v. County of Los Angeles*, No. 2:20-cv-04911-SB-KS, 2020 WL 7861975, at *2 (C.D.

23  Cal. Dec. 1, 2020) (taking judicial notice of 15 documents submitted by the County of Los

24  Angeles, including the "orders and proclamations made by the Los Angeles County Board

25  of Supervisors and the Governor of the State of California"); *Best Supplement Guide, LLC*

26  *v. Newsom*, No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at *2 (E.D. Cal. May 22,

27  2020) (taking judicial notice of "various documents issued by the federal government, the

28  State of California, San Joaquin County, and the City of Lodi").

In ruling on a motion to dismiss under Rule 12(b)(6), a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v, Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted).  A "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Skilstaf, Inc. v. CVS Caremark Corp*, 669 F.3d 1005, 1067 (9th Cir. 2012) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a 12(b)(6) motion to dismiss," and "[s]uch consideration does not 'convert the motion to dismiss into a motion for summary judgment.'"  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (citation omitted).

1.      First Amended Complaint, filed on October 6, 2021 in the case captioned *Whittaker v. All Reverse Mortg., Inc.*, No. CV-20-08016-PCT-DLR, ECF 7.  A true and correct copy of this document is attached hereto as **Exhibit A.**

2.      Nevada Secretary of State Entity Information, Easy Financial, publicly available from the Nevada Secretary of State (SilverFlume, Nevada's Business Portal) at https://esos.nv.gov/EntitySearch/BusinessInformation.  A true and correct copy of this document is attached hereto as **Exhibit B**.

3.      California Secretary of State Statement of Information, Easy Financial, document number 19-E11243, dated October 30, 2019, publicly available from the California Secretary of State at https://businesssearch.sos.ca.gov/CBS/Detail.  A true and correct copy of this document is attached hereto as **Exhibit C.**

4.      Arizona Department of Real Estate licensee lookup for Easy Financial, LLC, publicly available from the Arizona Department of Real Estate public database at https://services.azre.gov/publicdatabase/ListEntities.aspx.  A true and correct copy of this document is attached hereto as **Exhibit D.**

5.       Arizona Department of Real Estate licensee lookup for Sunset Equity, publicly available from the Arizona Department of Real Estate public database at https://services.azre.gov/publicdatabase/ListEntities.aspx.  A true and correct copy of this document is attached hereto as **Exhibit E.**

6.       California Department of Real Estate licensee lookup for Stone Sharp, publicly available from the California Department of Real Estate at https://www2.dre.ca.gov/PublicASP/pplinfo.asp?License_id=02063221.  A true and correct copy of this document is attached hereto as **Exhibit F.**

7.       Connected Investors Exchange list of real estate partners sorted by the letter "S", publicly available at https://connectedinvestors.com/company_name=sunset.  A true and correct copy of this document is attached hereto as **Exhibit G.**

8.       FCC Orders and Rulings 7 F.C.C. Rcd. 8752 (Oct. 16, 1992), publicly available at https://docs.fcc.gov/public/attachments/FCC-07-232A1.pdf.  A true and correct copy of this document is attached hereto as **Exhibit H.**

9.       47 U.S.C. § 227, Title 47 of the United States Code whose full text can be found from the United States Government Publishing Office at https://www.govinfo.gov/content/pkg/USCODE-2018-title47/html/USCODE-2018-title47-chap5-subchapII-partI-sec227.htm.  A true and correct copy of this document is attached hereto as **Exhibit I.**


Date:  November 15, 2021          LAW OFFICES OF BENJAMIN DONEL & ASSOCIATES

                                                    /s/ *Benjamin Donel*
                                                  Benjamin Donel
                                                  Attorney for Defendant
                                                  Donel Investments, LLC

**4**

# EXHIBIT A

Penny L. Koepke
pkoepke@hoalow.biz
**MAXWELL & MORGAN, P.C.**
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, an individual, individually and on behalf of all others similarly situated, | Case No. 3:21-cv-08212-DJH |
| *Plaintiff*, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Easy Financial, LLC d/b/a Sunset Equity, a California limited liability company, and Stone Sharp, an individual, | |
| *Defendants*. | |

Plaintiff Brenda Whittaker ("Whittaker" or "Plaintiff") brings this First Amended Class Action Complaint ("Complaint") against Defendant Easy Financial, LLC d/b/a Sunset Equity ("Sunset Equity") and Stone Sharp ("Sharp", and collectively with Sunset Equity, "Defendants") to stop Defendants' practice of sending repeated, unsolicited text messages to consumers who are registered on the National Do Not Call Registry and to obtain redress for all persons similarly injured by its conduct. Plaintiff seeks an award of statutory damages to the members of the Class, plus court costs and reasonable attorneys' fees. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and

belief, including investigation conducted by her attorneys.

**PARTIES**

1.    Plaintiff Whittaker is an individual who resides in Cottonwood, Yavapai County, Arizona.

2.    Defendant Easy Financial, LLC is a California limited liability company whose principal place of business is located at 6125 Washington Blvd, Suite 300, Culver City, California 90232.

3.    Defendant Stone Sharp is an individual and a resident of the State of California. Sharp is also a licensed real estate salesperson in the State of California. Sharp resides in Los Angeles, California.

**JURISDICTION & VENUE**

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or the "Act"), a federal statute. This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

5.    The Court has personal jurisdiction over Defendants and venue is proper in this District because they regularly conduct business in this District and a substantial part of the events giving rise to the claims asserted here occurred in this District.

**COMMON ALLEGATIONS OF FACT**

6.    Defendant Sunset Equity is a direct money lender that specializes in real estate debt and private equity investments.

7.    Defendant Sharp is employed as a senior loan officer with Sunset Equity.

8.    Unfortunately for consumers, Defendants casts their marketing net too wide. That is, in an attempt to promote their business and to generate leads for their direct

lending services, Defendants conducted (and continue to conduct) a wide scale telemarketing campaign and repeatedly sends unsolicited text messages to telephones which appear on the national Do Not Call Registry.

9.     Indeed, at no time did Defendants obtain prior express consent from Plaintiff or the class members orally or in writing to receive text messages from Defendants.

10.     The TCPA was enacted to protect consumers from unauthorized text messages exactly like those alleged in this Complaint—text messages placed to numbers without prior express written consent to persons who listed their phone numbers on the Do Not Call Registry. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, they also intentionally and repeatedly violated the TCPA.

11.     At all times material to this Complaint Defendants were and are fully aware that unsolicited telemarketing text messages are being made to consumer's cellular telephones through their own efforts and that of their agents.

12.     To the extent any third parties sent the text messages, the third parties acted on behalf of Defendants, for Defendants' benefit, and with Defendants' approval. Further, Defendants ratified the conduct by accepting the benefits of the text messaging campaign.

13.     By sending the unsolicited text messages at issue in this Complaint, Defendants caused Plaintiff and the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such text messages as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such text messages. Furthermore, the texts interfered with and interrupted Plaintiff's and the other class members' use and enjoyment of their phones, including the related data, software, and hardware components. Defendants also injured the Plaintiff and class members by causing wear and tear on their phones.

14.     On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to

cease all unauthorized text messaging activities to persons registered on the Do Not Call

Registry and an award of statutory damages to the class members, together with pre- and

post-judgment interest, costs and reasonable attorneys' fees.

### FACTS SPECIFIC TO PLAINTIFF

15. Plaintiff Whittaker is the primary and customary user of the cellular

telephone number ending in 9679. Whittaker registered the telephone number ending in

9679 on the national Do Not Call Registry on December 19, 2017.

16. On May 4, 2021, Plaintiff Whittaker received unsolicited text messages

from Defendants. The initial text messages were sent from the number (323) 645-2112.

The text messages advertised Defendants' products and services and were sent by

Defendant Sharp at Sunset Equity's direction and/or for Sunset Equity's benefit.

17. On May 7, 2021, Whittaker received additional text messages from

Defendants from the telephone number (323) 645-2112. The text messages again solicited

Plaintiff to utilize Sunset Equity's products and services. These text messages were also

sent by Stone Sharp at Sunset Equity's direction and/or for Sunset Equity's benefit.

18. Screenshots of the text messages are reproduced below:

 

19.     At no time, did Whittaker ever consent to receive text messages from Defendants.

20.     Whittaker has no prior relationship with Sunset Equity or Sharp.

21.     To redress these injuries, Whittaker, on behalf of itself and the Class of similarly situated individuals, brings suit under the TCPA, which prohibits unsolicited text messages to telephone numbers registered on the national Do Not Call Registry. On behalf of the Class, Whittaker seeks an injunction requiring Defendants to cease all unauthorized text messaging activities, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Class:

> **DNC Registry Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendants, or a third person acting on behalf of Defendants, texted more than one time on his/her telephone; (2) within any 12-month period; (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendants' products and services; and (5) for whom Defendants claims they obtained prior express consent in the same manner as Defendants claims they supposedly obtained prior express consent to call Whittaker, or for whom they did not obtain prior express written consent.

23.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants'

counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

24. **Numerosity:** The exact number of members within the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants sent text messages to thousands of consumers who fall into the defined Class. Members of the Class can be identified through reference to Defendants' business records.

25. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct.

26. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

27. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether Defendants systematically sent unsolicited text message advertisements to consumers whose telephone numbers were registered with the National Do Not Call Registry;

(c) Whether any third party made the texts and, if so, whether Defendants are liable for such texts;

(d) Whether the Plaintiff and the other members of the Class are entitled to statutory damages; and

6

(e)     Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

28.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

29.     **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendants have acted or refused to act on grounds substantially similar towards all members of the Class to render certification of the Class for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq*
### (On Behalf of Plaintiff and the DNC Registry Class)

30.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

31.     47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in

violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

32. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

33. 47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

34. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in

any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

35.     Defendants and/or their agent(s) violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations to telephone subscribers like Plaintiff and the DNC Registry Class members who registered their respective cell phone numbers on the National DNC Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

36.     Here, Defendants and/or their agent(s) sent more than one unsolicited text

message to Whittaker and the other members of the DNC Registry Class within a 12-month period without having prior written express consent to send such text messages.

37.     Each such text message was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

38.     Whittaker and the other members of the DNC Registry Class did not provide consent to receive such telemarketing texts from Defendants or their agents.

39.     Neither Defendants nor their agents have any record of consent to place such telemarketing text messages to Plaintiff or the other members of the DNC Registry Class.

40.     Defendants violated 47 C.F.R. §§ 64.1200(d) and (e) by causing texts to be sent for telemarketing purposes to wireless telephone subscribers, such as Plaintiff and the members of the DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a do not call policy and a list of persons who request not to receive telemarketing texts.

41.     Additionally, on information and belief, Defendants fail to maintain a written do not call policy that is available on request. On further information and belief, Defendants fail to train their employees and personnel involved in telemarketing in the existence and use of their do not call policy or do not call list.

42.     As a result of Defendants conduct as alleged herein, Whittaker and the members of the DNC Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, inter alia, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

43.     To the extent Defendants' misconduct is determined to have been willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Whittaker and the members of the DNC Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for the following relief:

10

A.   An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class and appointing her attorneys as Class Counsel;

B.   An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C.   An award of trebled damages if willfulness is shown;

D.   An order declaring Defendants' texts messages, as set out above, violate the TCPA;

E.   An injunction requiring Defendants to stop placing texts to consumers registered on the National Do Not Call Registry absent prior express consent;

F.   An award of pre-judgment interest;

G.   An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

H.   Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 6, 2021

**BRENDA WHITTAKER**, individually and on behalf of all others similarly situated,

By: /s/ Taylor T. Smith
One of Plaintiff' Attorneys

Penny L. Koepke
pkoepke@hoalow.biz
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Tel: (480) 833-1001

Taylor T. Smith (admitted *pro hac vice*)

11

tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

# EXHIBIT B

## ENTITY INFORMATION

### ENTITY INFORMATION

**Entity Name:**

EASY FINANCIAL, LLC

**Entity Number:**

LLC15605-2004

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Active

**Formation Date:**

07/16/2004

**NV Business ID:**

NV20041158227

**Termination Date:**

7/16/2504

**Annual Report Due Date:**

7/31/2022

**Series LLC:**

☐

**Restricted LLC:**

☐

### REGISTERED AGENT INFORMATION

**Name of Individual or Legal Entity:**

1ST CLASS ONLY

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Commercial Registered Agent

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

**Street Address:**

1504 US HWY 395 N #8, GARDNERVILLE, NV, 89410, USA

**Mailing Address:**

**Individual with Authority to Act:**

TERRALL (TERRY) W CHILCOAT

**Fictitious Website or Domain Name:**

**OFFICER INFORMATION**

☐ **VIEW HISTORICAL DATA**

| Title | Name | Address | Last Updated | Status |
|---|---|---|---|---|
| Manager | BENJAMIN DONEL | 6125 WASHINGTON BLVD #300, CULVER CITY, CA, 90232, USA | 07/14/2020 | Active |

Page 1 of 1, records 1 to 1 of 1

Filing History      Name History      Mergers/Conversions

Return to Search      Return to Results

# EXHIBIT C

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

**LLC-12**

19-E11243

# FILED

In the office of the Secretary of State
of the State of California

**OCT 30, 2019**

**This Space For Office Use Only**

**IMPORTANT — Read instructions before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

| 1. Limited Liability Company Name (Enter the exact name of the LLC. If you registered in California using an alternate name, see instructions.) |
|---|
| EASY FINANCIAL, LLC |

| 2. 12-Digit Secretary of State File Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 200527710266 | NEVADA |

**4. Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>6125 Washington Blvd, Suite 300 | Culver City | CA | 90232 |
| b. Mailing Address of LLC, if different than item 4a<br>6125 Washington Blvd, Suite 300 | Culver City | CA | 90232 |
| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box<br>6125 Washington Blvd, Suite 300 | Culver City | CA | 90232 |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Benjamin | | Donel | |

| b. Entity Name - Do not complete Item 5a |
|---|
| |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 6125 Washington Blvd, Suite 300 | Culver City | CA | 90232 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Lida | | Kohansameh | |

| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 6125 Washington Blvd, Suite 300 | Culver City | CA | 90232 |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| |

**7. Type of Business**

| a. Describe the type of business or services of the Limited Liability Company |
|---|
| Real Estate Investment |

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments, is true and correct.**

| 10/30/2019 | Benjamin Donel | Managing Member | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed. SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

LLC-12 (REV 01/2017)

Page 1 of 1

2017 California Secretary of State
www.sos.ca.gov/business/be

# EXHIBIT D





**Search Results**

Business Name 'easy financial', License Status 'All', License Type 'All', Office Type 'All'

| Drag a column header and drop it here to group by that column | | | | | |
|---|---|---|---|---|---|
| License Number | Legal Name | Business Name | Status | City | Zip |
| No records to display. | | | | | |
| Total: 0 | | | | | |

The Department makes every reasonable effort to ensure that all information contained in our databases is accurate. However, typographical and other errors may be present. The Department of Real Estate cannot guarantee the accuracy of the data provided on this web site and all information obtained shall be used at the sole risk of the user. The Department of Real Estate and the State of Arizona accept no liability and shall be held harmless by the user of the data obtained through this web site for any loss or damage that results from the use of the data.

Privacy Policy     Disclaimer Policy     EEOA Statement     Contact Information   |   © Copyright 2021  AZRE.gov

# EXHIBIT E





## Search Results

Business Name 'sunset equity', License Status 'All', License Type 'All', Office Type 'All'

| Drag a column header and drop it here to group by that column | | | | | |
|---|---|---|---|---|---|
| License Number | Legal Name | Business Name | Status | City | Zip |
| No records to display. | | | | | |
| Total: 0 | | | | | |

The Department makes every reasonable effort to ensure that all information contained in our databases is accurate. However, typographical and other errors may be present. The Department of Real Estate cannot guarantee the accuracy of the data provided on this web site and all information obtained shall be used at the sole risk of the user. The Department of Real Estate and the State of Arizona accept no liability and shall be held harmless by the user of the data obtained through this web site for any loss or damage that results from the use of the data.

Privacy Policy     Disclaimer Policy     EEOA Statement     Contact Information   |   © Copyright 2021  AZRE.gov

# EXHIBIT F

# STATE OF CALIFORNIA
# DEPARTMENT OF REAL ESTATE

In reviewing a licensee�s information, please be aware that license discipline information may have been removed from a licensee�s record pursuant to Business & Professions Code Section 10083.2 (c). However, discipline information may be available from the California Department of Real Estate upon submittal of a request, or by calling the Department�s public information line at 1-877-373-4542.
The license information shown below represents public information. It will not reflect pending licensing changes which are being reviewed for subsequent updating. Although the business and mailing addresses of real estate licensees are included, this information is not intended for mass mailing purposes.
Some historical disciplinary action documents may not be in compliance with certain accessibility functions. For assistance with these documents, please contact the Department's Licensing Flag Section.

License information taken from records of the Department of Real Estate on 11/8/2021 1:03:38 PM

| | |
|---|---|
| **License Type:** | SALESPERSON |
| **Name:** | Sharp, Stone Rush |
| **Mailing Address:** | 2300 BEVERLY BLVD APT 305<br>LOS ANGELES, CA 90057 |
| **License ID:** | 02063221 |
| **Expiration Date:** | 09/23/22 |
| **License Status:** | LICENSED NBA |
| **Salesperson License Issued:** | 09/24/18 |
| **Former Name(s):** | NO FORMER NAMES |
| **Responsible Broker:** | NO CURRENT RESPONSIBLE BROKER |
| **Comment:** | NO DISCIPLINARY ACTION |
| | NO OTHER PUBLIC COMMENTS |
| | >>>> Public information request complete <<<< |

# EXHIBIT G

# EXHIBIT H



## REAL ESTATE COMPANIES IN THE USA ON CONNECTED INVESTORS.COM

There are (39) real estate companies on Connected Investors that contain the word(s) **(sunset)**.

**NEWEST**

Buyers in Nashville

Need an Insurance

Need Insurance?
Sponsored

Season 2
Exactly
Pode

Watch over 70
FREE real esta
Enjoy & feel fre

Start Le

### SEARCH

**Company Name**

sunset          SEARCH

### FILTER

A  B  C  D  E  F  G  H  I  J  K  L  M  N  O  P  Q  R  S  T  U  V  W  X
Y  Z  .  1  2  3  4  5  6  7  8  9

### COMPANY RESULTS

| | | |
|---|---|---|
| Sunset Equity Group | Valley Sunset | Sunset Gold Associates |
| Sunset Equity Funding | Sierra Sunset Properties | Sunset Strip Realty |
| Sunset Paradise Investments 2 llc | Sunset Solutions LLC | Sunset Royal, LLC |
| Sunset Member Services(Gadget Savvy) | Sunset pt properties llc | Sunset Aquisition |
| Sunset Redevelopment, LLC | Sunset Vista REI LLC | Real Sunset LLC |
| sunsetridge of annandale inc. | Sunset Equity Funding | Sunset Strategies, LLC |
| Sunset Properties | Sunset Investment Group | SUNSETOWL LLC |
| Sunset Properties | Sunset Studios | Paradise Sunset Homes, LLC |
| Sunset investment group | Sunset Services | Sunset View Properties |
| ChasingSunsets investment group | Sunset Investments | Village Sunset |
| Sunset Remodeling , LLC | Sunset Realty | sunset homes |
| Sunset 3 Realty | Sunset Property Holdings | Sunset Island Properties, LLC |
| Sunset Real Estate Solutions, LLC | Sunset Pt. Properties LLC | Sunset Pointe Group |

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Rules and Regulations Implementing the | )     CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | ) |
| | ) |
| Request of ACA International for Clarification | ) |
| and Declaratory Ruling | ) |

**DECLARATORY RULING**

**Adopted: December 28, 2007**                                    **Released: January 4, 2008**

By the Commission:

# I.  INTRODUCTION

1.       In this Declaratory Ruling, we address a Petition for Expedited Clarification and Declaratory Ruling filed by ACA International (ACA).[1]  In this ruling, we clarify that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party.[2]

# II.  BACKGROUND

## A.  Telephone Consumer Protection Act of 1991

2.       On December 20, 1991, Congress enacted the Telephone Consumer Protection Act (TCPA),[3] as codified in section 227 of the Communications Act of 1934, as amended, in an effort to address a growing number of telephone marketing calls and certain telemarketing practices Congress found to be an invasion of consumer privacy.[4]  In relevant part, the TCPA regulates the use of automated

---

[1] ACA International Petition for an Expedited Clarification and Declaratory Ruling filed October 4, 2005 (*Petition*).  ACA describes itself as an international trade organization of credit and collection companies that provide a wide variety of accounts receivable management services.  ACA represents approximately 5,800 company members ranging from credit grantors, collection agencies, attorneys, and vendor affiliates.

[2] Debt collection calls are regulated primarily by the Federal Trade Commission and are subject to the requirements of the Fair Debt Collection Practices Act (FDCPA), which prohibits abusive, deceptive, and otherwise improper collection practices by third-party collectors.  15 U.S.C. § 1692 *et seq.*

[3] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), *codified at* 47 U.S.C. § 227 (TCPA).  The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[4] The TCPA directs the Commission, after comparing and evaluating "alternative methods," to adopt rules "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."  47 U.S.C. § 227(c)(1)-(4).

telephone equipment.[5] Specifically, section 227(b)(1)(A) prohibits the use of any automatic telephone dialing system[6] to call any telephone number assigned to a cellular telephone service absent an emergency purpose or the "prior express consent of the called party."[7] The TCPA also makes it unlawful to place a non-emergency telephone call to a residential line "using an artificial or prerecorded voice" without the recipient's consent unless the call is "exempted by rule or order of the Commission under paragraph (2)(B)."[8] Paragraph (2)(B), in turn, authorizes the Commission to enact limited exemptions from this ban, including an exemption for calls "that are not made for a commercial purpose" or "do not include the transmission of any unsolicited advertisement."[9]

3.       Section 227(b)(2)(B) authorizes the Commission to exempt noncommercial and certain other classes of calls from the prohibition on prerecorded messages to residences. By comparison, section 227(b)(2)(C) gives the Commission authority to exempt from the prohibition on autodialed or prerecorded message calls to wireless numbers contained in section 227(b)(1)(A)(iii) only those "calls to

---

[5] 47 U.S.C. § 227(b).

[6] Under the TCPA, the term "automatic telephone dialing system" means "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

[7] 47 U.S.C. § 227(b)(1)(A). ("It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency); (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]").

[8] 47 U.S.C. § 227(b)(1)(B). Subsection 227(b)(1)(B) provides:

It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States - (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)[.]

*Id. See also* 47 C.F.R. § 64.1200(a)(2).

[9] 47 U.S.C. § 227(b)(2)(B)(i) and (ii). Subsection (2)(B) states:

The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission – (B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe – (i) calls that are not made for a commercial purpose; and (ii) such classes or categories of calls made for commercial purposes as the Commission determines—(I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement…

47 U.S.C. § 227(b)(2)(B).

a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights the provision is intended to protect."[10]

**B. Commission's TCPA rules**

4.     The Commission first adopted rules implementing the TCPA in 1992.[11]  Under these rules, calls delivering artificial or prerecorded messages to residences were prohibited, absent the express consent of the called party.[12]  Exempted from this prohibition were certain categories of calls that the Commission determined did not adversely affect consumers' privacy rights.[13]  In the *1992 TCPA Order*, the Commission concluded that an express exemption for debt collection calls to residences was unnecessary as such calls fall within the exemptions adopted for commercial calls which do not transmit an unsolicited advertisement and for established business relationships.[14]  In addition, the Commission adopted rules prohibiting the use of autodialed and prerecorded message calls to cell phone numbers which incorporated the language of the TCPA virtually verbatim.[15]

5.     In 1995, the Commission released a Memorandum Opinion and Order addressing petitions for reconsideration of the *1992 TCPA Order*.[16]  Among other things, the Commission clarified that: 1) prerecorded debt collection calls are exempted from Section 227(b)(1)(B) of the TCPA which

---

[10] 47 U.S.C. § 227(b)(2)(C).

[11] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752 (1992) (*1992 TCPA Order*); *see also* 47 C.F.R. § 64.1200.

[12] 47 C.F.R. § 64.1200(a)(2).

[13] *1992 TCPA Order*, 7 FCC Rcd at 8769-73, paras. 32-39.  These exemptions included calls that are: 1) not made for a commercial purpose; 2) made for a commercial purpose but not do include the transmission of any unsolicited advertisement, 3) made to any person with whom the caller has an established business relationship; or 4) made by a tax-exempt nonprofit organization.

[14] *1992 TCPA Order*, 7 FCC Rcd at 8773, para. 39.

[15] *See* 47 C.F.R. § 64.1200(a)(1).  The Commission also determined that cellular carriers need not obtain additional consent from their cellular subscribers prior to initiating autodialer and artificial prerecorded message calls for which the cellular subscriber is not charged.  *1992 TCPA Order*, 7 FCC Rcd at 8775, para. 45. ("…neither TCPA nor the legislative history indicates that Congress intended to impede communications between radio common carriers and their customers regarding the delivery of customer services by barring calls to cellular subscribers for which the subscriber is not called [sic]").  However, the Commission determined that market research calls delivered by autodialers to cellular customers were prohibited by the TCPA absent the prior express consent of the subscriber.  *Id.* at para. 45.

[16] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397-98, para. 14 (1995) (*1995 TCPA Reconsideration Order*).

prohibits prerecorded or artificial voice messages to residences;[17] and 2) debt collection calls not directed to randomly or sequentially generated telephone numbers do not require an identification message.[18]

6.      In 2002, the Commission initiated a rulemaking proceeding to determine whether the Commission's rules needed to be revised to more effectively carry out Congress's directives in the TCPA.[19]  On July 3, 2003, the Commission revised and clarified the existing rules under the TCPA and adopted new rules to provide consumers with several options for avoiding unwanted telephone solicitations.[20]

7.      In particular, the Commission clarified the rules on autodialed and prerecorded message calls to wireless telephone numbers.  Specifically, the Commission affirmed that it is unlawful "to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number."[21]  Noting that Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls, and that such calls can be costly and inconvenient, the Commission determined that the TCPA and its rules prohibit such calls to wireless numbers.  The Commission also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[22]  Finally, the Commission found that a

---

[17] *1995 TCPA Reconsideration Order, 10 FCC Rcd* at 12400, para. 17 ("We have specifically noted that 'prerecorded debt collection calls [are] exempt from the prohibitions on [prerecorded] calls to residences as . . . commercial calls . . . which do not transmit an unsolicited advertisement'" (*citing 1992 TCPA Order*, 7 FCC Rcd at 8773, para. 39)).

[18] *See 1995 TCPA Reconsideration Order*, 10 FCC Rcd at 12400-01, paras. 17 and 19.  *See also 1992 TCPA Order*, 7 FCC Rcd at 8773, para. 39 ("With respect to concerns regarding compliance with both the [Fair Debt Collection Practices Act] and our rules in prerecorded message calls, we emphasize that the identification requirements will not apply to debt collection calls because such calls are not autodialer calls (i.e., dialed using a random or sequential number generator) and hence are not subject to the identification requirements for prerecorded messages in 64.1200(e)(4) of our rules").

[19] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking and Memorandum Opinion and Order, 17 FCC Rcd 17459, CG Docket No. 02-278 and CC Docket No. 92-90 (2002) (*2002 NPRM*).  In the *2002 NPRM*, and as relevant here, the Commission sought specific comment on the definition of "automatic telephone dialing system," and whether it was necessary to identify the technologies section 227 is designed to address.  The Commission also asked whether a predictive dialer is subject to the ban on calls to emergency lines, health care facilities, paging services, and any service for which the called party is charged for the call.  *2002 NPRM*, 17 FCC Rcd at 17473-75, paras. 23 and 26.

[20] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) (*2003 TCPA Order*).

[21] *2003 TCPA Order*, 18 FCC Rcd at 14115, para. 165.  *See* 47 U.S.C. § 227(b)(1), which contains exceptions for calls made for emergency purposes or made with the prior express consent of the called party.

[22] *Id.*  The Commission also noted that callers have no way to determine how consumers are charged for their wireless service.  *Id.*

predictive dialer[23] falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress.[24]

### C. ACA Petition

8. On October 4, 2005, ACA filed a petition seeking clarification that the prohibition against autodialed or prerecorded calls to wireless telephone numbers in 47 C.F.R. § 64.1200(a)(1)(iii) does not apply to creditors and collectors when calling wireless telephone numbers to recover payments for goods and services received by consumers.[25] ACA maintains that the TCPA was enacted to curtail the "onslaught of telemarketing calls," and that the use of autodialers to attempt to recover payments is not telemarketing.[26] According to ACA, the Commission has always interpreted the autodialer restriction so as not to apply to debt collection calls.[27] On April 5, 2006, the Commission sought comment on ACA's petition.[28] In a supplemental filing on April 26, 2006, ACA argues that the Commission's determination that predictive dialers fall within the meaning of the statutory definition of "automated telephone dialing equipment" was incorrect and conflicts with the language of the TCPA.[29] The majority

---

[23] The Commission explained in its *2003 TCPA Order* that "a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. . . [i]n most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at rate to ensure that when a consumer answers the phone, a sales person is available to take the call." *See 2003 TCPA Order*, 18 FCC Rcd at 14091, para. 131.

[24] *2003 TCPA Order*, 18 FCC Rcd at 14093, para. 133.

[25] *See supra* note 1. *See also Petition* at 12.

[26] *Petition* at 11-12.

[27] *Petition* at 14-20 (citing statements from the Commission that debt collection calls constitute neither telephone solicitations nor include unsolicited advertisements).

[28] *Consumer & Governmental Affairs Bureau Seeks Comment on ACA International's Petition for an Expedited Clarification and Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, Public Notice, 21 FCC Rcd 3600 (2006). Comments were due May 11, and replies were due May 22, 2006. *See* 71 Fed. Reg. 24634 (April 26, 2006).

[29] ACA International's Supplemental Submission to Petition for an Expedited Clarification and Declaratory Ruling, filed April 26, 2006 (*Supplemental Submission*). For purposes of this Declaratory Ruling, we treat ACA's supplemental petition as part of its original petition.

of comments filed were from creditors and collectors who support ACA's petition.[30] Consumer groups and individual consumers also filed comments, most of whom opposed ACA's petition.[31]

## III.  DISCUSSION

### A.  TCPA Autodialer Prohibition and Prior Express Consent

9.      Although the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes or made with the prior express consent of the called party.[32] Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party,[33] we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.  In the *1992 TCPA Order*, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."[34] The legislative history in the TCPA provides support for this interpretation.  Specifically, the House report on what ultimately became section 227 states that:

> [t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such a line to the caller for use in normal business communications.[35]

10.     We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the

---

[30] *See, e.g.,* American Bankers Association and Consumer Bankers Association Comments (arguing that the relief requested by ACA should be extended to include all calls made using predictive dialers to wireless telephone numbers of existing customers), American Financial Services Association Comments, Chase Home Finance LLC Comments, Credit Management, LP Comments, Global Acceptance Credit Company Comments, Equinox Collection Service, Inc. Comments, National Association of Retail Collection Attorneys Comments.  *See also* AT&T Comments, Direct Marketing Association Comments, Verizon Comments.

[31] *See, e.g.,* Electronic Privacy Information Center (EPIC) Comments, National Association of State Utility Consumer Advocates (NASUCA) Comments, Robert Biggerstaff Comments, Office of the Indiana Attorney General Comments, Privacy Rights Clearinghouse Comments.

[32] 47 U.S.C. § 227(b)(1)(A).

[33] *See, e.g.,* Verizon Comments and AT&T Comments.

[34] *See 1992 TCPA Order*, 7 FCC Rcd at 8769, para. 31 (citing House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 13, "noting that in such instances the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications").  The Commission also noted, however, that if a caller's number is "captured" by a Caller ID or an ANI device without notice to the residential telephone subscriber, the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls.  *Id.*

[35] H.R. Rep. 102-317 at 17.

transaction that resulted in the debt owed.[36]  To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.[37]  Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.  Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.  Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.[38]

11.     We also reiterate that the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[39]  We note that this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute "telephone solicitations."[40]  However, we agree with ACA and other commenters that calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing.[41]  Therefore, calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on "telephone solicitations."[42]

---

[36] *See Petition* at 5 ("The purpose of these telephone communications is to recover payment for obligations owed to creditors…They are limited to customers of creditors who have received a product without payment.  Typically the telephone number is provided by the customer for purposes or receiving calls, for example, as part of a credit application").

[37] We encourage creditors to include language on credit applications and other documents informing the consumer that, by providing a wireless telephone number, the consumer consents to receiving autodialed and prerecorded message calls from the creditor or its third party debt collector at that number.  *See, e.g.,* EPIC Comments at 5 (creditors should be directed to obtain express authorization from customers in writing).

[38] A third party collector may also be liable for a violation of the Commission's rules.  In addition, prior express consent provided to a particular creditor will not entitle that creditor (or third party collector) to call a consumer's wireless number on behalf of other creditors, including on behalf of affiliated entities.

[39] 47 U.S.C. § 227(b)(1)(A)(iii).  *See also 2003 TCPA Order*, 18 FCC Rcd at 14115, para. 165.

[40] *See* 47 U.S.C. § 227(b)(1)(A)(iii).  *See also* 137 Cong. Rec. S18781-02, S18785 (Nov. 27, 1991) (Statement from Senator Pressler that "[t]his bill also allows hospitals, police stations, fire stations, and owners of paging and cellular equipment to eliminate all unsolicited calls").

[41] In the *2003 TCPA Order*, the Commission stated that "the act of 'terminating' an established business relationship will not hinder or thwart creditors' attempts to reach debtors by telephone, to the extent that debt collection calls constitute neither telephone solicitations nor include unsolicited advertisements."  *See 2003 TCPA Order*, 18 FCC Rcd at 14079, para. 113 n.358.

[42] *See* 47 C.F.R. § 64.1200(e).  For example, the National Do-Not-Call List does not apply to calls that do not fall within the definition of "telephone solicitation" as defined in section 227(a)(3).  These include surveys, market research, and political or religious speech calls.  *See 2003 TCPA Order,* 18 FCC Rcd at 14039-40, para. 37.

### B. Predictive Dialers

12.      In this Declaratory Ruling, we affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers.  In its Supplemental Submission, ACA argues that the Commission erred in concluding that the term "automatic telephone dialing system" includes a predictive dialer.[43]  ACA states that debt collectors use predictive dialers to call specific numbers provided by established customers,[44] and that a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists.

13.      As noted above, the Commission first sought comment on predictive dialers in 2002 and asked whether using a predictive dialer is subject to the TCPA's autodialer restrictions.[45]  The Commission found that, based on the statutory definition of "automatic telephone dialing system,"[46] the TCPA's legislative history, and current industry practice and technology, a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress.[47]  The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention.  The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology.[48]

14.      Moreover, the Commission noted that the TCPA does not ban the use of automated dialing technology.[49]  It merely prohibits such technologies from dialing emergency numbers, health care facilities, telephone numbers assigned to wireless services, and any other numbers for which the consumer is charged for the call.  Such practices were determined by Congress to threaten public safety and inappropriately shift costs to consumers.  Most importantly, the Commission said that, to find that calls to emergency numbers, health care facilities, and wireless numbers are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls.[50]  ACA raises no new

---

[43] *Supplemental Submission* at 4-18.  *See also supra* note 23.

[44] *Supplemental Submission* at 6, 10.

[45] *2002 NPRM*, 17 FCC Rcd at 17475, para. 26.

[46] *See supra* note 6.

[47] *2003 TCPA Order*, 18 FCC Rcd at 14092-93, para 133.

[48] *See 2003 TCPA Order*, 18 FCC Rcd at 14091-92, para. 132 (*citing* 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies").

[49] Debt collectors may use autodialing technology to call wireline numbers.  Debt collection calls fall within the exemption for prerecorded calls that are commercial, but do not include an unsolicited advertisement.  *See 1995 TCPA Reconsideration Order*, 10 FCC Rcd at 12400, para. 17.

[50] *2003 TCPA Order*, 18 FCC Rcd at 14092-93, para. 133.

information about predictive dialers that warrants reconsideration of these findings.[51]  With this ruling, however, creditors and debt collectors may use predictive dialers to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt.[52]  We note, however, that where the subscriber has not made the number available to the creditor regarding the debt, we expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers,[53] and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers.[54]

## IV.  PROCEDURAL MATTERS

15.     To request materials in accessible formats (such as Braille, large print, electronic files, or audio format), send an e-mail to fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau at 202-418-0530 (voice), 202-418-0432 (TTY).  This Declaratory Ruling can also be downloaded in Word and Portable Document Format at http://www.fcc.gov/cgb/policy.

## V.  ORDERING CLAUSES

16.     Accordingly, IT IS ORDERED that, pursuant to Sections 1-4, 227, and 303(r) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227 and 303(r); and Section 64.1200 of the Commission's rules, 47 C.F.R. § 64.1200, this Declaratory Ruling in CG Docket No. 02-278 IS ADOPTED as set forth herein.

---

[51] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Second Order on Reconsideration, 20 FCC Rcd 3788 (2005) (declining to reconsider the Commission's rules on predictive dialers and abandoned calls).

[52] *See supra* para. 9.

[53] *See 2003 TCPA Order*, 18 FCC Rcd at 14117, para. 170.  *See also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 19 FCC Rcd 19215 (2004) (establishing a limited safe harbor period from the prohibition on placing automatic telephone dialing system (autodialed) or prerecorded message calls to wireless numbers when such calls are made to numbers that have been recently ported from wireline service to wireless service).

[54] *See 2003 TCPA Order*, 18 FCC Rcd at 14117, para. 170.  *See also* DMA Wireless Number Suppression List at http://preference.the-dma.org/products/wireless.shtml.  Neustar also has available a service that provides data on numbers ported from wireline to wireless service on a daily basis.  *See* http://www.tcpacompliance.com/.  ACA contends that the use of such databases is "inherently deficient" and not a viable solution for ACA members.  *See Supplemental Submission* at 29.

17.     IT IS FURTHER ORDERED that the Request for Clarification filed by ACA International in CG Docket 02-278 on October 4, 2005 and supplemented by ACA on April 26, 2006, IS GRANTED insofar as ACA seeks clarification that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party, AND in all other respects, IS DENIED.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

# EXHIBIT I

**47 U.S.C.**

United States Code, 2018 Edition
Title 47 - TELECOMMUNICATIONS
CHAPTER 5 - WIRE OR RADIO COMMUNICATION
SUBCHAPTER II - COMMON CARRIERS
Part I - Common Carrier Regulation
Sec. 227 - Restrictions on use of telephone equipment
From the U.S. Government Publishing Office, www.gpo.gov

## §227. Restrictions on use of telephone equipment

**(a) Definitions**

As used in this section—

(1) The term "automatic telephone dialing system" means equipment which has the capacity—

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

(2) The term "established business relationship", for purposes only of subsection (b)(1)(C)(i), shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations, as in effect on January 1, 2003, except that—

(A) such term shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber; and

(B) an established business relationship shall be subject to any time limitation established pursuant to paragraph (2)(G)).[1]

(3) The term "telephone facsimile machine" means equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper.

(4) The term "telephone solicitation" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

(5) The term "unsolicited advertisement" means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise.

**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through—

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); or

(D) to use an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.

**(2) Regulations; exemptions and other provisions**

The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission—

(A) shall consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent;

(B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—

(i) calls that are not made for a commercial purpose; and

(ii) such classes or categories of calls made for commercial purposes as the Commission determines—

(I) will not adversely affect the privacy rights that this section is intended to protect; and

(II) do not include the transmission of any unsolicited advertisement;

(C) may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not

charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect;

(D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if—

(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under subparagraph (E);

(iv) the notice includes—

(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and

(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d);

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

(i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

(F) may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, allow professional or trade associations that are tax-exempt nonprofit organizations to send unsolicited advertisements to their members in furtherance of the association's tax-exempt purpose that do not contain the notice required by paragraph (1)(C)(iii), except that the Commission may take action under this subparagraph only—

(i) by regulation issued after public notice and opportunity for public comment; and

(ii) if the Commission determines that such notice required by paragraph (1)(C)(iii) is not necessary to protect the ability of the members of such associations to stop such associations from sending any future unsolicited advertisements;

(G)(i) may, consistent with clause (ii), limit the duration of the existence of an established business relationship, however, before establishing any such limits, the Commission shall—

(I) determine whether the existence of the exception under paragraph (1)(C) relating to an

established business relationship has resulted in a significant number of complaints to the Commission regarding the sending of unsolicited advertisements to telephone facsimile machines;

(II) determine whether a significant number of any such complaints involve unsolicited advertisements that were sent on the basis of an established business relationship that was longer in duration than the Commission believes is consistent with the reasonable expectations of consumers;

(III) evaluate the costs to senders of demonstrating the existence of an established business relationship within a specified period of time and the benefits to recipients of establishing a limitation on such established business relationship; and

(IV) determine whether with respect to small businesses, the costs would not be unduly burdensome; and

(ii) may not commence a proceeding to determine whether to limit the duration of the existence of an established business relationship before the expiration of the 3-month period that begins on July 9, 2005; and

(H) may restrict or limit the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owed to or guaranteed by the United States.

**(3) Private right of action**

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

**(c) Protection of subscriber privacy rights**

**(1) Rulemaking proceeding required**

Within 120 days after December 20, 1991, the Commission shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. The proceeding shall—

(A) compare and evaluate alternative methods and procedures (including the use of electronic databases, telephone network technologies, special directory markings, industry-based or company-specific "do not call" systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages;

(B) evaluate the categories of public and private entities that would have the capacity to establish and administer such methods and procedures;

(C) consider whether different methods and procedures may apply for local telephone solicitations, such as local telephone solicitations of small businesses or holders of second class mail permits;

(D) consider whether there is a need for additional Commission authority to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section,

and, if such a finding is made and supported by the record, propose specific restrictions to the Congress; and

(E) develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section.

**(2) Regulations**

Not later than 9 months after December 20, 1991, the Commission shall conclude the rulemaking proceeding initiated under paragraph (1) and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers.

**(3) Use of database permitted**

The regulations required by paragraph (2) may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase. If the Commission determines to require such a database, such regulations shall—

(A) specify a method by which the Commission will select an entity to administer such database;

(B) require each common carrier providing telephone exchange service, in accordance with regulations prescribed by the Commission, to inform subscribers for telephone exchange service of the opportunity to provide notification, in accordance with regulations established under this paragraph, that such subscriber objects to receiving telephone solicitations;

(C) specify the methods by which each telephone subscriber shall be informed, by the common carrier that provides local exchange service to that subscriber, of (i) the subscriber's right to give or revoke a notification of an objection under subparagraph (A), and (ii) the methods by which such right may be exercised by the subscriber;

(D) specify the methods by which such objections shall be collected and added to the database;

(E) prohibit any residential subscriber from being charged for giving or revoking such notification or for being included in a database compiled under this section;

(F) prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database;

(G) specify (i) the methods by which any person desiring to make or transmit telephone solicitations will obtain access to the database, by area code or local exchange prefix, as required to avoid calling the telephone numbers of subscribers included in such database; and (ii) the costs to be recovered from such persons;

(H) specify the methods for recovering, from persons accessing such database, the costs involved in identifying, collecting, updating, disseminating, and selling, and other activities relating to, the operations of the database that are incurred by the entities carrying out those activities;

(I) specify the frequency with which such database will be updated and specify the method by which such updating will take effect for purposes of compliance with the regulations prescribed under this subsection;

(J) be designed to enable States to use the database mechanism selected by the Commission for purposes of administering or enforcing State law;

(K) prohibit the use of such database for any purpose other than compliance with the requirements of this section and any such State law and specify methods for protection of the privacy rights of persons whose numbers are included in such database; and

(L) require each common carrier providing services to any person for the purpose of making

telephone solicitations to notify such person of the requirements of this section and the regulations thereunder.

**(4) Considerations required for use of database method**

If the Commission determines to require the database mechanism described in paragraph (3), the Commission shall—

(A) in developing procedures for gaining access to the database, consider the different needs of telemarketers conducting business on a national, regional, State, or local level;

(B) develop a fee schedule or price structure for recouping the cost of such database that recognizes such differences and—

(i) reflect the relative costs of providing a national, regional, State, or local list of phone numbers of subscribers who object to receiving telephone solicitations;

(ii) reflect the relative costs of providing such lists on paper or electronic media; and

(iii) not place an unreasonable financial burden on small businesses; and

(C) consider (i) whether the needs of telemarketers operating on a local basis could be met through special markings of area white pages directories, and (ii) if such directories are needed as an adjunct to database lists prepared by area code and local exchange prefix.

**(5) Private right of action**

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

**(6) Relation to subsection (b)**

The provisions of this subsection shall not be construed to permit a communication prohibited by subsection (b).

**(d) Technical and procedural standards**

**(1) Prohibition**

It shall be unlawful for any person within the United States—

(A) to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with the technical and procedural standards prescribed under this subsection, or to use any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with such standards; or

(B) to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is

sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual.

**(2) Telephone facsimile machines**

The Commission shall revise the regulations setting technical and procedural standards for telephone facsimile machines to require that any such machine which is manufactured after one year after December 20, 1991, clearly marks, in a margin at the top or bottom of each transmitted page or on the first page of each transmission, the date and time sent, an identification of the business, other entity, or individual sending the message, and the telephone number of the sending machine or of such business, other entity, or individual.

**(3) Artificial or prerecorded voice systems**

The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that—

(A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and

(B) any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls.

**(e) Prohibition on provision of inaccurate caller identification information**

**(1) In general**

It shall be unlawful for any person within the United States, in connection with any telecommunications service or IP-enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).

**(2) Protection for blocking caller identification information**

Nothing in this subsection may be construed to prevent or restrict any person from blocking the capability of any caller identification service to transmit caller identification information.

**(3) Regulations**

**(A) In general**

Not later than 6 months after December 22, 2010, the Commission shall prescribe regulations to implement this subsection.

**(B) Content of regulations**

**(i) In general**

The regulations required under subparagraph (A) shall include such exemptions from the prohibition under paragraph (1) as the Commission determines is appropriate.

**(ii) Specific exemption for law enforcement agencies or court orders**

The regulations required under subparagraph (A) shall exempt from the prohibition under paragraph (1) transmissions in connection with—

(I) any authorized activity of a law enforcement agency; or

(II) a court order that specifically authorizes the use of caller identification manipulation.

**(4) Repealed. Pub. L. 115–141, div. P, title IV, §402(i)(3), Mar. 23, 2018, 132 Stat. 1089**

**(5) Penalties**

**(A) Civil forfeiture**

**(i) In general**

Any person that is determined by the Commission, in accordance with paragraphs (3) and (4) of section 503(b) of this title, to have violated this subsection shall be liable to the United States for a forfeiture penalty. A forfeiture penalty under this paragraph shall be in addition to any other penalty provided for by this chapter. The amount of the forfeiture penalty determined under this paragraph shall not exceed $10,000 for each violation, or 3 times that amount for each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $1,000,000 for any single act or failure to act.

**(ii) Recovery**

Any forfeiture penalty determined under clause (i) shall be recoverable pursuant to section 504(a) of this title.

**(iii) Procedure**

No forfeiture liability shall be determined under clause (i) against any person unless such person receives the notice required by section 503(b)(3) of this title or section 503(b)(4) of this title.

**(iv) 2-year statute of limitations**

No forfeiture penalty shall be determined or imposed against any person under clause (i) if the violation charged occurred more than 2 years prior to the date of issuance of the required notice or notice or apparent liability.

**(B) Criminal fine**

Any person who willfully and knowingly violates this subsection shall upon conviction thereof be fined not more than $10,000 for each violation, or 3 times that amount for each day of a continuing violation, in lieu of the fine provided by section 501 of this title for such a violation. This subparagraph does not supersede the provisions of section 501 of this title relating to imprisonment or the imposition of a penalty of both fine and imprisonment.

**(6) Enforcement by States**

**(A) In general**

The chief legal officer of a State, or any other State officer authorized by law to bring actions on behalf of the residents of a State, may bring a civil action, as parens patriae, on behalf of the residents of that State in an appropriate district court of the United States to enforce this subsection or to impose the civil penalties for violation of this subsection, whenever the chief legal officer or other State officer has reason to believe that the interests of the residents of the State have been or are being threatened or adversely affected by a violation of this subsection or a regulation under this subsection.

**(B) Notice**

The chief legal officer or other State officer shall serve written notice on the Commission of any civil action under subparagraph (A) prior to initiating such civil action. The notice shall include a copy of the complaint to be filed to initiate such civil action, except that if it is not feasible for the State to provide such prior notice, the State shall provide such notice immediately upon instituting such civil action.

**(C) Authority to intervene**

Upon receiving the notice required by subparagraph (B), the Commission shall have the right—

(i) to intervene in the action;

(ii) upon so intervening, to be heard on all matters arising therein; and

(iii) to file petitions for appeal.

**(D) Construction**

For purposes of bringing any civil action under subparagraph (A), nothing in this paragraph shall prevent the chief legal officer or other State officer from exercising the powers conferred on that officer by the laws of such State to conduct investigations or to administer oaths or affirmations or to compel the attendance of witnesses or the production of documentary and other evidence.

**(E) Venue; service or process**

**(i) Venue**

An action brought under subparagraph (A) shall be brought in a district court of the United States that meets applicable requirements relating to venue under section 1391 of title 28.

**(ii) Service of process**

In an action brought under subparagraph (A)—

(I) process may be served without regard to the territorial limits of the district or of the State in which the action is instituted; and

(II) a person who participated in an alleged violation that is being litigated in the civil action may be joined in the civil action without regard to the residence of the person.

**(7) Effect on other laws**

This subsection does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States.

**(8) Definitions**

For purposes of this subsection:

**(A) Caller identification information**

The term "caller identification information" means information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a telecommunications service or IP-enabled voice service.

**(B) Caller identification service**

The term "caller identification service" means any service or device designed to provide the user of the service or device with the telephone number of, or other information regarding the origination of, a call made using a telecommunications service or IP-enabled voice service. Such term includes automatic number identification services.

**(C) IP-enabled voice service**

The term "IP-enabled voice service" has the meaning given that term by section 9.3 of the Commission's regulations (47 C.F.R. 9.3), as those regulations may be amended by the Commission from time to time.

**(9) Limitation**

Notwithstanding any other provision of this section, subsection (f) shall not apply to this subsection or to the regulations under this subsection.

**(f) Effect on State law**

**(1) State law not preempted**

Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which

prohibits—

    (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;

    (B) the use of automatic telephone dialing systems;

    (C) the use of artificial or prerecorded voice messages; or

    (D) the making of telephone solicitations.

**(2) State use of databases**

If, pursuant to subsection (c)(3), the Commission requires the establishment of a single national database of telephone numbers of subscribers who object to receiving telephone solicitations, a State or local authority may not, in its regulation of telephone solicitations, require the use of any database, list, or listing system that does not include the part of such single national database that relates to such State.

**(g) Actions by States**

**(1) Authority of States**

Whenever the attorney general of a State, or an official or agency designated by a State, has reason to believe that any person has engaged or is engaging in a pattern or practice of telephone calls or other transmissions to residents of that State in violation of this section or the regulations prescribed under this section, the State may bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions. If the court finds the defendant willfully or knowingly violated such regulations, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the preceding sentence.

**(2) Exclusive jurisdiction of Federal courts**

The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection. Upon proper application, such courts shall also have jurisdiction to issue writs of mandamus, or orders affording like relief, commanding the defendant to comply with the provisions of this section or regulations prescribed under this section, including the requirement that the defendant take such action as is necessary to remove the danger of such violation. Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond.

**(3) Rights of Commission**

The State shall serve prior written notice of any such civil action upon the Commission and provide the Commission with a copy of its complaint, except in any case where such prior notice is not feasible, in which case the State shall serve such notice immediately upon instituting such action. The Commission shall have the right (A) to intervene in the action, (B) upon so intervening, to be heard on all matters arising therein, and (C) to file petitions for appeal.

**(4) Venue; service of process**

Any civil action brought under this subsection in a district court of the United States may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or wherein the violation occurred or is occurring, and process in such cases may be served in any district in which the defendant is an inhabitant or where the defendant may be found.

**(5) Investigatory powers**

For purposes of bringing any civil action under this subsection, nothing in this section shall prevent the attorney general of a State, or an official or agency designated by a State, from exercising the powers conferred on the attorney general or such official by the laws of such State to conduct investigations or to administer oaths or affirmations or to compel the attendance of

witnesses or the production of documentary and other evidence.

### (6) Effect on State court proceedings

Nothing contained in this subsection shall be construed to prohibit an authorized State official from proceeding in State court on the basis of an alleged violation of any general civil or criminal statute of such State.

### (7) Limitation

Whenever the Commission has instituted a civil action for violation of regulations prescribed under this section, no State may, during the pendency of such action instituted by the Commission, subsequently institute a civil action against any defendant named in the Commission's complaint for any violation as alleged in the Commission's complaint.

### (8) "Attorney general" defined

As used in this subsection, the term "attorney general" means the chief legal officer of a State.

## (h) Junk fax enforcement report

The Commission shall submit an annual report to Congress regarding the enforcement during the past year of the provisions of this section relating to sending of unsolicited advertisements to telephone facsimile machines, which report shall include—

(1) the number of complaints received by the Commission during such year alleging that a consumer received an unsolicited advertisement via telephone facsimile machine in violation of the Commission's rules;

(2) the number of citations issued by the Commission pursuant to section 503 of this title during the year to enforce any law, regulation, or policy relating to sending of unsolicited advertisements to telephone facsimile machines;

(3) the number of notices of apparent liability issued by the Commission pursuant to section 503 of this title during the year to enforce any law, regulation, or policy relating to sending of unsolicited advertisements to telephone facsimile machines;

(4) for each notice referred to in paragraph (3)—

(A) the amount of the proposed forfeiture penalty involved;

(B) the person to whom the notice was issued;

(C) the length of time between the date on which the complaint was filed and the date on which the notice was issued; and

(D) the status of the proceeding;

(5) the number of final orders imposing forfeiture penalties issued pursuant to section 503 of this title during the year to enforce any law, regulation, or policy relating to sending of unsolicited advertisements to telephone facsimile machines;

(6) for each forfeiture order referred to in paragraph (5)—

(A) the amount of the penalty imposed by the order;

(B) the person to whom the order was issued;

(C) whether the forfeiture penalty has been paid; and

(D) the amount paid;

(7) for each case in which a person has failed to pay a forfeiture penalty imposed by such a final order, whether the Commission referred such matter for recovery of the penalty; and

(8) for each case in which the Commission referred such an order for recovery—

(A) the number of days from the date the Commission issued such order to the date of such referral;

(B) whether an action has been commenced to recover the penalty, and if so, the number of days from the date the Commission referred such order for recovery to the date of such commencement; and

(C) whether the recovery action resulted in collection of any amount, and if so, the amount collected.

(June 19, 1934, ch. 652, title II, §227, as added Pub. L. 102–243, §3(a), Dec. 20, 1991, 105 Stat. 2395; amended Pub. L. 102–556, title IV, §402, Oct. 28, 1992, 106 Stat. 4194; Pub. L. 103–414, title III, §303(a)(11), (12), Oct. 25, 1994, 108 Stat. 4294; Pub. L. 108–187, §12, Dec. 16, 2003, 117 Stat. 2717; Pub. L. 109–21, §§2(a)–(g), 3, July 9, 2005, 119 Stat. 359–362; Pub. L. 111–331, §2, Dec. 22, 2010, 124 Stat. 3572; Pub. L. 114–74, title III, §301(a), Nov. 2, 2015, 129 Stat. 588; Pub. L. 115–141, div. P, title IV, §402(i)(3), title V, §503(a)(1)–(4)(A), Mar. 23, 2018, 132 Stat. 1089, 1091, 1092.)

### AMENDMENT OF SUBSECTION (E)

*Pub. L. 115–141, div. P, title V, §503(a)(1)–(4)(A), (5), Mar. 23, 2018, 132 Stat. 1091, 1092, provided that, effective on the date that is 6 months after the date on which the Federal Communications Commission prescribes regulations under paragraph (4) (set out as a Regulations note under this section), subsection (e) of this section is amended, and after such effective date, subsection (e) of this section will read as follows:*

**(e) Prohibition on provision of misleading or inaccurate caller identification information**

**(1) In general**

*It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States, in connection with any voice service or text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B).*

**(2) Protection for blocking caller identification information**

*Nothing in this subsection may be construed to prevent or restrict any person from blocking the capability of any caller identification service to transmit caller identification information.*

**(3) Regulations**

**(A) In general**

*The Commission shall prescribe regulations to implement this subsection.*

**(B) Content of regulations**

**(i) In general**

*The regulations required under subparagraph (A) shall include such exemptions from the prohibition under paragraph (1) as the Commission determines is appropriate.*

**(ii) Specific exemption for law enforcement agencies or court orders**

*The regulations required under subparagraph (A) shall exempt from the prohibition under paragraph (1) transmissions in connection with—*
*(I) any authorized activity of a law enforcement agency; or*
*(II) a court order that specifically authorizes the use of caller identification manipulation.*

**(4) Repealed. Pub. L. 115–141, div. P, title IV, §402(i)(3), Mar. 23, 2018, 132 Stat. 1089**

**(5) Penalties**

**(A) Civil forfeiture**

**(i) In general**

*Any person that is determined by the Commission, in accordance with paragraphs (3) and (4) of section 503(b) of this title, to have violated this subsection shall be liable to the United States for a forfeiture penalty. A forfeiture penalty under this paragraph shall be in addition*

to any other penalty provided for by this chapter. The amount of the forfeiture penalty determined under this paragraph shall not exceed $10,000 for each violation, or 3 times that amount for each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $1,000,000 for any single act or failure to act.

### (ii) Recovery

Any forfeiture penalty determined under clause (i) shall be recoverable pursuant to section 504(a) of this title.

### (iii) Procedure

No forfeiture liability shall be determined under clause (i) against any person unless such person receives the notice required by section 503(b)(3) of this title or section 503(b)(4) of this title.

### (iv) 2-year statute of limitations

No forfeiture penalty shall be determined or imposed against any person under clause (i) if the violation charged occurred more than 2 years prior to the date of issuance of the required notice or notice or apparent liability.

## (B) Criminal fine

Any person who willfully and knowingly violates this subsection shall upon conviction thereof be fined not more than $10,000 for each violation, or 3 times that amount for each day of a continuing violation, in lieu of the fine provided by section 501 of this title for such a violation. This subparagraph does not supersede the provisions of section 501 of this title relating to imprisonment or the imposition of a penalty of both fine and imprisonment.

# (6) Enforcement by States

## (A) In general

The chief legal officer of a State, or any other State officer authorized by law to bring actions on behalf of the residents of a State, may bring a civil action, as parens patriae, on behalf of the residents of that State in an appropriate district court of the United States to enforce this subsection or to impose the civil penalties for violation of this subsection, whenever the chief legal officer or other State officer has reason to believe that the interests of the residents of the State have been or are being threatened or adversely affected by a violation of this subsection or a regulation under this subsection.

## (B) Notice

The chief legal officer or other State officer shall serve written notice on the Commission of any civil action under subparagraph (A) prior to initiating such civil action. The notice shall include a copy of the complaint to be filed to initiate such civil action, except that if it is not feasible for the State to provide such prior notice, the State shall provide such notice immediately upon instituting such civil action.

## (C) Authority to intervene

Upon receiving the notice required by subparagraph (B), the Commission shall have the right—

(i) to intervene in the action;
(ii) upon so intervening, to be heard on all matters arising therein; and
(iii) to file petitions for appeal.

## (D) Construction

For purposes of bringing any civil action under subparagraph (A), nothing in this paragraph shall prevent the chief legal officer or other State officer from exercising the powers conferred on that officer by the laws of such State to conduct investigations or to administer oaths or

*affirmations or to compel the attendance of witnesses or the production of documentary and other evidence.*

### (E) Venue; service or process

#### (i) Venue

*An action brought under subparagraph (A) shall be brought in a district court of the United States that meets applicable requirements relating to venue under section 1391 of title 28.*

#### (ii) Service of process

*In an action brought under subparagraph (A)—*

*(I) process may be served without regard to the territorial limits of the district or of the State in which the action is instituted; and*

*(II) a person who participated in an alleged violation that is being litigated in the civil action may be joined in the civil action without regard to the residence of the person.*

### (7) Effect on other laws

*This subsection does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States.*

### (8) Definitions

*For purposes of this subsection:*

#### (A) Caller identification information

*The term "caller identification information" means information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service.*

#### (B) Caller identification service

*The term "caller identification service" means any service or device designed to provide the user of the service or device with the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service. Such term includes automatic number identification services.*

#### (C) Text message

*The term "text message"—*

*(i) means a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service code;*

*(ii) includes a short message service (commonly referred to as "SMS") message and a multimedia message service (commonly referred to as "MMS") message; and*

*(iii) does not include—*

*(I) a real-time, two-way voice or video communication; or*

*(II) a message sent over an IP-enabled messaging service to another user of the same messaging service, except a message described in clause (ii).*

#### (D) Text messaging service

*The term "text messaging service" means a service that enables the transmission or receipt of a text message, including a service provided as part of or in connection with a voice service.*

#### (E) Voice service

*The term "voice service"—*

*(i) means any service that is interconnected with the public switched telephone network*

*and that furnishes voice communications to an end user using resources from the North American Numbering Plan or any successor to the North American Numbering Plan adopted by the Commission under section 251(e)(1) of this title; and*

   *(ii) includes transmissions from a telephone facsimile machine, computer, or other device to a telephone facsimile machine.*

### (9) Limitation

   *Notwithstanding any other provision of this section, subsection (f) shall not apply to this subsection or to the regulations under this subsection.*
*See 2018 Amendment notes below.*

#### REFERENCES IN TEXT

   This chapter, referred to in subsec. (e)(5)(A)(i), was in the original "this Act", meaning act June 19, 1934, ch. 652, 48 Stat. 1064, known as the Communications Act of 1934, which is classified principally to this chapter. For complete classification of this Act to the Code, see section 609 of this title and Tables.

#### AMENDMENTS

   **2018**—Subsec. (e). Pub. L. 115–141, §503(a)(3), inserted "misleading or" before "inaccurate" in heading.
   Subsec. (e)(1). Pub. L. 115–141, §503(a)(1), substituted "or any person outside the United States if the recipient is within the United States, in connection with any voice service or text messaging service" for "in connection with any telecommunications service".
   Subsec. (e)(3)(A). Pub. L. 115–141, §503(a)(4)(A), substituted "The Commission" for "Not later than 6 months after December 22, 2010, the Commission".
   Subsec. (e)(4). Pub. L. 115–141, §402(i)(3), struck out par. (4). Text read as follows: "Not later than 6 months after December 22, 2010, the Commission shall report to Congress whether additional legislation is necessary to prohibit the provision of inaccurate caller identification information in technologies that are successor or replacement technologies to telecommunications service or IP-enabled voice service."
   Subsec. (e)(8)(A), (B). Pub. L. 115–141, §503(a)(2)(A), (B), substituted "voice service or a text message sent using a text messaging service" for "telecommunications service or IP-enabled voice service".
   Subsec. (e)(8)(C) to (E). Pub. L. 115–141, §503(a)(2)(C), added subpars. (C) to (E) and struck out former subpar. (C) which defined IP-enabled voice service.
   **2015**—Subsec. (b)(1)(A)(iii). Pub. L. 114–74, §301(a)(1)(A), inserted ", unless such call is made solely to collect a debt owed to or guaranteed by the United States" after "charged for the call".
   Subsec. (b)(1)(B). Pub. L. 114–74, §301(a)(1)(B), inserted ", is made solely pursuant to the collection of a debt owed to or guaranteed by the United States," after "emergency purposes".
   Subsec. (b)(2)(H). Pub. L. 114–74, §301(a)(2), added subpar. (H).
   **2010**—Subsecs. (e) to (h). Pub. L. 111–331 added subsec. (e) and redesignated former subsecs. (e) to (g) as (f) to (h), respectively.
   **2005**—Subsec. (a)(2) to (4). Pub. L. 109–21, §2(b), added par. (2) and redesignated former pars. (2) and (3) as (3) and (4), respectively. Former par. (4) redesignated (5).
   Subsec. (a)(5). Pub. L. 109–21, §2(b)(1), (g), redesignated par. (4) as (5) and inserted ", in writing or otherwise" before period at end.
   Subsec. (b)(1)(C). Pub. L. 109–21, §2(a), amended subpar. (C) generally. Prior to amendment, subpar. (C) read as follows: "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine; or".
   Subsec. (b)(2)(D) to (G). Pub. L. 109–21, §2(c)–(f), added subpars. (D) to (G).
   Subsec. (g). Pub. L. 109–21, §3, added subsec. (g).
   **2003**—Subsec. (b)(1). Pub. L. 108–187 inserted ", or any person outside the United States if the recipient is within the United States" after "United States" in introductory provisions.
   **1994**—Subsec. (b)(2)(C). Pub. L. 103–414, §303(a)(11), substituted "paragraph" for "paragraphs".
   Subsec. (e)(2). Pub. L. 103–414, §303(a)(12), substituted "national database" for "national datebase" after "such single".
   **1992**—Subsec. (b)(2)(C). Pub. L. 102–556 added subpar. (C).

#### EFFECTIVE DATE OF 2018 AMENDMENT

Pub. L. 115–141, div. P, title V, §503(a)(5), Mar. 23, 2018, 132 Stat. 1092, provided that: "The amendments made by this subsection [amending this section] shall take effect on the date that is 6 months after the date on which the Commission [Federal Communications Commission] prescribes regulations under paragraph (4) [set out as a note under this section]."

### Effective Date of 2003 Amendment

Amendment by Pub. L. 108–187 effective Jan. 1, 2004, see section 16 of Pub. L. 108–187, set out as an Effective Date note under section 7701 of Title 15, Commerce and Trade.

### Effective Date; Deadline for Regulations

Pub. L. 102–243, §3(c), Dec. 20, 1991, 105 Stat. 2402, as amended by Pub. L. 102–556, title I, §102, Oct. 28, 1992, 106 Stat. 4186, provided that:

"(1) Regulations.—The Federal Communications Commission shall prescribe regulations to implement the amendments made by this section [enacting this section and amending section 152 of this title] not later than 9 months after the date of enactment of this Act [Dec. 20, 1991].

"(2) Effective date.—The requirements of section 227 of the Communications Act of 1934 [this section] (as added by this section), other than the authority to prescribe regulations, shall take effect one year after the date of enactment of this Act [Dec. 20, 1991]."

### Regulations

Pub. L. 115–141, div. P, title V, §503(a)(4)(B), Mar. 23, 2018, 132 Stat. 1092, provided that: "The Commission [Federal Communications Commission] shall prescribe regulations to implement the amendments made by this subsection [amending this section] not later than 18 months after the date of enactment of this Act [Mar. 23, 2018]."

Pub. L. 114–74, title III, §301(b), Nov. 2, 2015, 129 Stat. 588, provided that: "Not later than 9 months after the date of enactment of this Act [Nov. 2, 2015], the Federal Communications Commission, in consultation with the Department of the Treasury, shall prescribe regulations to implement the amendments made by this section [amending this secton]."

Pub. L. 109–21, §2(h), July 9, 2005, 119 Stat. 362, provided that: "Except as provided in section 227(b)(2)(G)(ii) of the Communications Act of 1934 [47 U.S.C. 227(b)(2)(G)(ii)] (as added by subsection (f)), not later than 270 days after the date of enactment of this Act [July 9, 2005], the Federal Communications Commission shall issue regulations to implement the amendments made by this section."

### Construction

Pub. L. 115–141, div. P, title V, §503(d), Mar. 23, 2018, 132 Stat. 1094, provided that: "Nothing in this section [enacting section 227a of this title, amending this section, and enacting provisions set out as notes under this section], or the amendments made by this section, shall be construed to modify, limit, or otherwise affect any rule or order adopted by the Commission [Federal Communications Commission] in connection with—

"(1) the Telephone Consumer Protection Act of 1991 (Public Law 102–243; 105 Stat. 2394) [see Short Title of 1991 Amendment note set out under section 609 of this title] or the amendments made by that Act; or

"(2) the CAN–SPAM Act of 2003 (15 U.S.C. 7701 et seq.)."

### Congressional Statement of Findings

Pub. L. 102–243, §2, Dec. 20, 1991, 105 Stat. 2394, provided that: "The Congress finds that:

"(1) The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

"(2) Over 30,000 businesses actively telemarket goods and services to business and residential customers.

"(3) More than 300,000 solicitors call more than 18,000,000 Americans every day.

"(4) Total United States sales generated through telemarketing amounted to $435,000,000,000 in 1990, a more than four-fold increase since 1984.

"(5) Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

"(6) Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes

from telemarketers.

"(7) Over half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations; therefore, Federal law is needed to control residential telemarketing practices.

"(8) The Constitution does not prohibit restrictions on commercial telemarketing solicitations.

"(9) Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

"(10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

"(11) Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.

"(12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

"(13) While the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call, the Federal Communications Commission should have the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy, or for noncommercial calls, consistent with the free speech protections embodied in the First Amendment of the Constitution.

"(14) Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.

"(15) The Federal Communications Commission should consider adopting reasonable restrictions on automated or prerecorded calls to businesses as well as to the home, consistent with the constitutional protections of free speech."

[1] So in original. Second closing parenthesis probably should not appear.